Is in re Marriage of Mathis, that's case number 4110301, for the appellant, Tracy Nally, for the appellant, Sarah Kinney.  May it please the court and counsel. I represent Ken Mathis, the appellant in this appeal, and the petitioner in the case in the trial court. The parties of the trial court need your help. We're up here on a certified question that the court certified that you accepted. Here's the problem. For a long time, since 1982 or 1983, case law has consistently held that in a bifurcated dissolution of marriage proceeding, that the date of valuation of marital and non-marital property is the date of dissolution of marriage. One of the earliest cases holding so was in re Marriage of Rossi, out of the 1st District. An early 4th District case was in re Marriage of Stone. And more recently, a case out of the 3rd District, in re Marriage of Awan, decided in 2009. All held that the date of dissolution is the date of valuation of marital property. But, as of January 1st, 1993, the state legislature made Section 503F effective. And that's 750 Illinois Compiled Statutes 5-503 subparagraph F, which states in pertinent part, In a proceeding for dissolution of marriage, the court, in determining the value of marital and non-marital property for purposes of dividing property, shall value the property as of the date of trial, or some other date as close to the date of trial as possible. In this case, the trial court has issued a ruling following its interpretation of that statute, rather than the common law that holds that date of valuation is the date of dissolution. And this has resulted in the valuation date being moved three times in this particular case, because of the prolonged nature of the case. The main marital property in this case is a business and real estate that's involved with those businesses. The trial on ancillary issues started in April of 2004, and that was before a judgment of grounds was heard. The trial was decided. The trial was delayed. A judgment on grounds agreed to by the parties was entered in August of 2004. The trial was delayed further. A later valuation date was set by the court after a motion requesting that a valuation be set for purposes of managing the trial. That was brought by my client, Mr. Mathis, and that valuation date was January 1, 2006. That was the ruling of the court at that time, also following 503F. The case was further delayed, and the valuation date was again reconsidered, and the last valuation date that was set was December 31, 2010. So there have been three valuation dates set already. One was the date when the trial started in April of 2004. One was January 1, 2006. And now, December 31, 2010. Now the issue in this case is an issue of law certified by the trial court, and it is this. In a bifurcated dissolution proceeding, when a grounds judgment has been entered, and when there is a lengthy delay between the date of entry of the grounds judgment and the hearing on ancillary issues, is the appropriate date for valuation of marital property the date of dissolution or a date as close as practicable to the date of trial of the ancillary issues? Our position is that the date of dissolution is the correct date for valuation of marital property in a bifurcated case. Okay, well, what does 503F mean then? Well... Because it says in a trial where you're valuing property, you're supposed to use the date closest to trial. Yes. Well, actually, there have been two cases that have talked about 503F. Both of them came out of this court. Neither was a bifurcated case. 503F does make sense in non-bifurcated cases. And so, my position is that those two cases which have come out of this court and which have talked about 503F and which were not bifurcated cases, you can see the logic of 503F. In one of those cases, the Donovan case decided in 2005, and there was a hearing on all issues. That means grounds and ancillary issues. The hearing was held in January of 2004, and the judgment of all issues was rendered in December 2004. The valuation date was not that important, actually, because there was only evidence. There was only evidence on the valuation of the property in that particular case. And the property, which I believe was a 401K plan, actually was valued even before the date of hearing, but it was the only evidence presented. But there was an argument raised by the losing spouse that it should have been a later date in December of 2004. But the reason that it was held to be a correct valuation was because of the limited evidence on valuation that was presented at trial, which was not objected to at the time. Now, the A1 case that's out of the third district doesn't even talk about 503F. It does not talk about 503F. It follows the common law of valuation being date of dissolution, and it does not talk about 503F. And the statute doesn't say anything about whether it's a bifurcated case or a non-bifurcated case. It does not. It uses the term date of trial. And it's our position that date of trial is an ambiguous term, particularly in a bifurcated case, because in a bifurcated case there's got to be two trials, one on grounds, one on ancillary issues. And it's also ambiguous just when you look at how courts manage their dockets these days. Very busy courts. A civil docket, it's non-jury, it's an equity docket in divorce cases. And sometimes, and very often in our particular county, cases will be heard two days this month, two days next month, because it's just the best way to manage that very, very busy docket. And so not only as a practical matter there's busy dockets with extended trial dates, but also a bifurcated case necessitates two trial dates. So it's our position that 503F is ambiguous, patently ambiguous, by using that term trial date. And that does allow this court to interpret 503F consistently with the well-settled law of the common law cases, which is date of value is date of dissolution. Didn't you just say that bifurcated hearings require two different trial dates? Yeah, well, trial on grounds. Right, but you could do it all in one day if you wanted to. You could hear the grounds in the first thing, find your grounds, and then proceed to the trial on property. I used to do that all the time as a child. Yes, but I don't think that's a bifurcation. Sure it is, because you're hearing grounds first, and then you're hearing the evidence on property. You make your finding regarding grounds, and then you move on. So it's a bifurcated hearing. I don't think it necessarily requires two days. It doesn't necessarily. It doesn't necessarily require two days. You're right. You're right. But I think that it's very typical that those will be on different days. I think it's typical. Maybe in Champaign County. Yeah, in Champaign County, I think that, well, actually, I'd say the most typical case is a case where there's a grounds hearing and a settlement agreement, and it all happens on one day. That's the typical case. That's most of the cases. But I think that it's not unusual for a grounds hearing to occur, for that judgment to be entered, and for the ancillary issues to be set off to a different time. As a trial judge, I got to the point where I would not grant a judgment of dissolution. I would make an order finding grounds, but I wouldn't give the judgment of dissolution because of this very issue and the fact that it would engender a lot of delay because usually somebody wanted the judgment so they could go out and get married again. Yes. Then you get into all kinds of problems. So by only entering an order on grounds, they had an incentive to get to trial and finish everything else up. So we did it differently in my county than they did in Champaign. Yes. Well, handling that way would avoid the issue that's before the court today. That's correct. You would agree that Section 503 controls the disposition of property, wouldn't you? Yes. Well, and this 503F obviously is in 503. Yes, part of the whole. It's part of the disposition of property. So why would I not conclude that trial refers to the trial regarding how the property is to be divided? Well, you might conclude that, but I think that that language is still ambiguous on its face, heavily ambiguous on its face. But also I think that it's latently ambiguous as well, which is argued in my brief as well. If it's ambiguous, did you go back and look at legislative history on the 1993 amendment? Yes, I tried. I couldn't find any. I couldn't find any. Because it would be nice if that rolled out with an answer for us. And if it had, we may not be up here either. We may have all just said whatever, knew what it meant in the trial court. So I think 503, 503, the beginning of 503 talks about what's non-marital property and what's marital property. And there's some very specific things that are not marital property. And then I think it is subsection B that says there's a presumption that property that's acquired after the marriage and before the divorce is marital property. And that portion of the statute, I believe, tries to draw as clear lines as they could about what's marital and non-marital property. And I think 503F causes that, those lines to be blurred even further as a result of the timing of a trial. Because 503F, by saying that valuation is the date of trial, and in a bifurcated proceeding, and in this case, years after the divorce has occurred, it is setting a valuation date that really has nothing to do with the marriage itself, but has only to do with the proceedings in the courtroom. But it's only marital property that we're talking about, right? So, in other words, there's not additional property coming into the pot subsequent to the dissolution. It's just whatever property existed on the date that judgment of dissolution was entered, we're looking at when do we value that. So if your client acquired other property after the judgment of dissolution in 04, that's his and it's out of the pot. Yes, right, right. But in this case, the property that's involved is a business in real estate. And although there's no question that those things were acquired during the course of the marriage, the value of those things can have changed tremendously since 2004. And my client, who happens to be the client who is running that business, that real estate, is putting his non-marital post-divorce efforts into that business, trying to prosper, support his family, keep his employees employed, and make all of the good business decisions that he can to enhance that business. But there's got to be a time when the enhancement of the value of that business is... the date that the distribution of property is made, but give him credit for the enhancements that he has made since the date of judgment of dissolution. That would be the same thing. It would? Would it? Wouldn't it just be easier to say, value at the date of dissolution? Because that would... And I think, well, you know, I'm thinking it's the same thing. I'll have to think about that. I don't think it's the same thing. What happens in a scenario, I know there's a case, and I'm going to call the name of it off the top of my head, where the value of the property goes significantly down? Yes, there was a case. What happens then? Well, I think that becomes... that's what they said in the case, and I can't remember what case it was, but it might have been actually cited in Ms. Denny's briefs. But what the court did in that case was that they focused on the fact that, I believe it was like an investment account or something like that, and there was a diminishment of value, and the court said the issue wasn't a date of valuation. It was whether you could enforce the judgment,  I think it was Schinelli. And so the issue became could the spouse who had the property actually pay it over because it wasn't there anymore. That's how I read that particular case. It was a matter of enforcement and not a matter of valuation. But also in that particular case, I believe the judgment may have been one where they said that the value of the property should be shared or there was enough language in the order. And so I think it may have also been interpreted as an equal share split rather than a dollar value property. I think that's how the order was ultimately interpreted by the appellate court. So I think in this particular case, I mean, unfortunately there's a lot of things that I think show the danger of not following the common law rule. And that valuation dates have been set and changed. It makes a difficult trial, or it's difficult to prepare for a trial where valuation is changing because dates of trial have changed. And the assets involved are businesses, which are something that are more organic than many properties that don't change in value like a business might as a result of the efforts of the spouse who's no longer married to the other spouse in the case. Anyway, I believe that the ambiguities of 503F are such that this court can reconcile the Wilseth and common law rule about valuing the date of dissolution as being the date of valuation with 503F. And that's what I would like this court to hold in this case. Thank you, counsel. You will have rebuttal. Ms. Tenney. May it please the court? Briefly, I want to say that I disagree with her evaluation of what the common law was. My reading of the cases indicates that they simply used the term judgment of dissolution of marriage without any definition as to whether there was a grounds judgment or it was a final judgment on the whole thing. I do not think the cases really made that much, they used it interchangeably all the time, the same terms. I believe that when it was codified, what was codified January the 1st, 1993, was clear, not ambiguous, and set forth you're going to evaluate the properties close to the date of trial as practical. Why haven't subsequent cases made that clear then, if that was so clear in 1993? I have no idea. Because every case I found, for example, we talk about the A1 case, it doesn't use that section. We talk about the Hale case, it doesn't cite a particular section. In fact, in the Hale case, which I think is the closest to what we have, in the case of Barr, there was specifically in the statute, if it was evaluated at the time of the agreement being entered or the judgment, and there was misrepresentation, it could be opened up. But they couldn't use that part of the statute because there was no value. So they just basically said based upon the misrepresentation, the opening of it, they would use the most current value, not the date, even though they left the grounds judgment intact. I don't know why, maybe it just never made it up to the appellate court on that particular issue because maybe it is so clear. And that would be an argument that I would state. But I believe it's clear that what the court wants to do, and one of the reasons, I don't want to jump around, but I also looked up the legislative history. There were so many changes in 1993, so many changes to the Act that you really couldn't get an idea, I agree with counsel, about this particular one because there were so many changes. I think there is no doubt, when you look at the Act, it's an equitable division of property. An equitable division of property. And even when we go to that Schinelli case, although they talk about we gave you numbers, and it was supposed to be 150 some, I don't remember, thousands of her, and 150 some thousands of him, and then it decreased in value so much, it talked about equity. It talked about equitable division of property. And I believe the statute is clear that you go as close to the date of trial as practical. And I would note for the court, I think one of the reasons the Hale case is the closest on point in this matter, is that, I don't know if the court realizes it, I'm sure they do, the whole record was sent up. We had had two days of trial in April, and we were set, I believe, for the additional trial in September to finish it up. The grounds judgment was entered in August of 2004. Kenneth Mathis submitted a report from PDC about environmental conditions in August of 2004. We moved to bar that. We were not notified of an expert ahead of time. The trial court denied that, so we could not go ahead with our September hearing date, because a new expert had come in, and I knew there was nothing said, no report given until already August of 2004, after two days of full trial on ancillary matters had entered. Now we go on to this case, and counsel had said, yes, there's prolonged proceedings. If you look at the record that came up, you will find out that in February 11, 2011, Mr. Mathis withdrew all of his environmental objections, and they said, representation by Team Alley, that is on the docket sheet, issues withdrawing any assertion that any environmental issues that are contained in the three corporations should be valued, have any impact on the present fair market value of the three marital corporate entities and further represents she doesn't tend to present any testimony at any time during the trial of the ancillary issues or ask any questions of proposed experts of either party as to the existence of any environmental problems on the property in question. Further, representation that the Craybill report, that's the PDC report we got in August of 2004, will not be used at the trial. Arguments heard on the motion to certify. So we were in a case, if you look at the record, that yes, we did let the grounds judgment be entered, but the final had already been set. I want to tell you, I'm a great supporter of Judge Blackman, and I think 90-some percent of the time Judge Blackman is right and he's one of the best family law judges I've ever been in front of. But I don't agree with letting you open up and add an expert August, April, May, June to four months after the trial has already started. So I do disagree with him on that. But what we have is if you have gone through the records, you will find that we had to go back to court and move to open our disclosure in order to take the depositions of previous owner, land owner, and previous owner. But counsel, this court has in front of it a certified question. Correct. It's very specific. How does this relate? The things that you're arguing, I don't believe this is before this court. That's not really the issue we need to resolve. I do think it relates because it's to the point of if you're going to say that the judgment is at the date the grounds is entered, then all of the conduct by Kenneth in reference to this matter and this being put off in a large degree to that conduct won't even be considered. And it's not equitable. And so that's how I think. Do I think you need to resolve the conduct? No. But I do think it presents a facts situation to this court, very similar to the Hale, in terms of what representations were made, what was said, what was done. And I would note at the time that this was given to us, Kenneth's expert had already testified about the business on the stand and we've had some testimony about both businesses. And then there's some real estate involved. One was a lease, one was ownership, and other real estate there had been. And real estate appraisal. But I think right on point is Judge Blockman's opinion that he gave in February 1, 2006. I think it's well-reasoned and I think it's just as valid today as it was then. He goes through this, even though there's cases, and in his mind, and I agree with him, that it is very clear on its face what the statute meant, as close to the date of trial as practical. That it was meant to be the date the property is heard. And he further said, I believe in his opinion, you'll have to take a look, that that's one of the reasons he believed it was done, is to make it very clear what it was, to clarify that when there was a bifurcated hearing, that that's how it would be handled. And I don't disagree with the court, the appellate court can't do anything in terms of the facts I'm saying, and that's to be handled by the trial court. But I would note in the Hale case, which I think is the closest to point, there were material misrepresentations. He left out values of two different things. And on, I believe, 1401, they opened it up, and they said it should be evaluated as of the date that it went back to the court, not as of the date that it would have been a grounds judgment. I would note to the court that I do not understand why Awan didn't address 503F. I really don't understand why Hale didn't address 503F specifically. And again, I think I take the position, it's pretty clear on its face, it's what the statute meant, so there really wouldn't be too much need to many trial courts addressing it. I would note that I think when you look at this case, if you don't do that, then what we can have is the following. Let's say Mr. Mathis' business went down in value. Let's say the real estate went down in value. Do we think that's happened since 2004? Yeah. And let's say the business went up in value. Yeah. But we would then be apportioning things on not a current up-to-date value. If something increased in value simply because of elements without Kenneth Mathis' control, it's marital property. And there's a way to evaluate it. 503, if we look at C2, when one state of property makes a contribution to another state of party, and I'm not adding the part that it doesn't go in, the contributing estate shall be reimbursed from the state receiving the contribution notwithstanding any transmutation. So what does that mean? That means the following. We have a business, excuse me, judge, I think they were married in 1977. The first business was acquired, purchased in 1983. The second business was purchased in 1997. No doubt it's marital property. What we do by using this formula is we make it, it's a marital estate, what's the current value. Then, Mr. Mathis, what did you do, if anything, to increase the value during the time you weren't married to Mrs. Mathis or my client Terry? What did you do? And you will be credited for it in court. Here becomes the, when you say... Well, I think I asked that question. It's not the same. Okay, why isn't it? Because the burden is going to be completely different. And I believe, based upon the statute, it's marital property, and the burden goes on the person not claiming it's marital property to prove it. The burden is completely different. If we get an evaluation as of the date the grounds were entered, then it is my burden to go through and to try and determine what is the increase, what is the decrease, and all this. If we get it as of the date of the property, the ancillary matters, then it becomes the burden of the other person. Now, why is that important? Whoever has the marital property is the one that shouldn't have the burden. This is marital property. It is because of the definitions that you read in the statute that it's a presumption of marital property. Therefore, we have to go to the point that Mr. Mathis can come forward. He can show us what he's done. Now, Mr. Mathis, this is a scrap metal, I think, type of operation. To have an increase in value because China is buying more scrap metal and get it all attributed to Mr. Mathis would be wrong because there's not a bit of this that's non-marital business. To have an increase of value that Mr. Mathis can show that he put some money in and it's equal to that value or he put some money in and should have it, that's a different story. So, like the market's going up and down, the value of a business can go up and down depending on what they sell, depending on market values. Therefore, once you define this as marital property, the fair thing, and this means in any case. We're not changing from any case one to another. Once you define it as marital property, you evaluate it as at the date of ancillary matters and it's up to the other person who wants to claim it's non-marital to prove what it is. And we have case law and we have a statute set forth exactly to do that and take care of that. Ms. Denny, I've got a question. I follow your analysis of how these proceedings ought to work with fluctuations in value and so on and so forth. Correct. I get that. The one thing that's left out of your analysis, though, and that's what troubles me is if there is an increase in value to a business post-dissolution, how do we determine how much the increase in value is due to the owner of the business' efforts, which would be non-marital. That's correct. As opposed to market forces. Very hard. No doubt about that. But the bottom line is this. That's when judges get out of dartboard. Well, on this case, I think it's going to be a dartboard either way. I don't see a way around it because regardless in terms of what's found by the court, if it's found that it is the date of Brown's judgment, I have no doubt I have to have my expert testify to the whole same thing of how much is this attributable to his effort,  Now, in addition there to your expert can look at the salary someone was paid and was it reasonable in the business. If they got paid less salary than is reasonable in the business, you can always argue that that indeed was money that you were doing owing that was non-marital because it's your reasonable income. However, if you got paid triple of what an officer normally makes in that business, you took money out of the marital business and that was marital money. I think it's very difficult. To tell you it's easy would be so wrong, but I tell you there are ways that you can go forward with that. The alternative is to do like, and that's why I cited the Schinelli case, the alternative is to be stuck in an area where it's completely inequitable. And in Schinelli, if that woman had gotten 150 some thousand or whatever it was, I think he got nothing or something. This was after the court entered the order. They did say they wanted to basically divide it equally. I want to say that, but she would get X amount. I think when you go from the proposition that this whole family law is set forth of what's marital property and you divide up marital property, you are taking marital property and you need to take it to the end of the last hearing. Is it difficult? Yes. Frankly, there's lots of times I'm having to do tracing and stuff under this Act, and I'm sure you all have looked at it and you know how difficult it is and how hard it is to do. It is not easy. Would it be easier to freeze valuations at the date of dissolution and then apply to the marital share determined at that point, an annual interest figure that would compensate for the delay? I don't think so. I don't think it would be any easier at all. I mean, if you do this, and I think that's one of the reasons the statute was changed and I sort of briefly mentioned it for stock options. I think that came in in 93-2. I'm not positive. It could have been later than that. You have unvested stock options, and now we put in the property that the other person can have the right to it, even though they're not vested. Do they take it at the price it might be worth at the time of the divorce? No. We take it at what the option is when it comes due two years later, three years later, because that's what's fair and equitable. I mean, I think the only fair and equitable thing to be done is treating marital properties, marital property determined as of the time the final hearing is had, and then it is up to the person to prove non-marital. Is it very hard? Sometimes, absolutely, because the example you gave me, that doesn't mean that either client would be treated fairly. I don't know what's going to happen. You give an amount. You give an interest rate. What if the market booms and the business is worth double that, and it's all marital business? I realize his effort may not be marital, but there are certain ways to calculate it concerning salary that's normal in the business, what you should be done. You can look and your expert can look to see if scrap metal has gone up in China and other places as a market. You would have a market trend in terms of that, but I've got to tell you under 503, it's a very difficult section in evaluating property, and I constantly have difficulty proving, tracing and other things to get my client the money back, but right now it's the best of what we've got. And it works decently well most of the time. Not all the time. And I think if you're trying to, if you really look at the statute and you look at the stock options and you look at the other things, we are trying to treat the parties equally. We're trying to get an equitable resolution. That's not even equitable. That doesn't mean 50-50. I don't know how you can get an equitable resolution on a marital property without evaluating it at the current value and letting either party try to come in and say, you were paid twice in salary. I want some of that money back. You weren't paid enough. I get more money. I added five different run-in loaders, and I bought it not out of the business but out of my pocket. That can be determined, whether you took money from the business and did it as marital or you did it out of your pocket. But yes, it's hard. And I don't have an answer to it being hard, except it's hard all the time in terms of that. So if we adopt your position, would we be the first court? Pardon? Would we be the first court to say that the trial in this statutory section means... You would be the first court to specifically say it. That's correct. Yep. I believe that would be correct, because I have not found any other court that specifically said it in terms of that. Counsel, I want to ask you a question. It really doesn't probably pertain to your issue here, but what does that... That's good. I'm going to ask your opposing counsel the same thing. What does the language in this section that says, following disillusion of marriage by a court that lacked personal jurisdiction over the absent spouse, what the heck does that mean? How can you have a disillusion of marriage by a court that lacked personal jurisdiction? I think you can do it by publication. By publication, you can address certain issues, but not other issues. So when it says lacked personal jurisdiction, jurisdiction was obtained by publication? Yes. That's what I think. Okay. Your opposing counsel is nice. I won't have to ask. Okay. Thank you for schooling me on this. I don't know what that language meant. I've done this too long to think of schooling anyone. I think, like I said, in summary, I think you look at Judge Glockman's opinion. I think he was absolutely correct on that. I think it's clear. I agree with him. He ran his courtroom all the time. He's been a trial court judge in divorce law telling you, I don't care what you do, when grounds are entered or not entered, it's going to be the closest to the gate that we can have it. We're having ancillary proceedings, and that's how it's been done the whole time. Does that make it right? No. But I think his opinion is very good. Even though he did it in 2006, I still think it's on point, and I think it's the correct way in this case. Thank you. Thank you. Rebuttal, please. Waiting rebuttal.  Thanks to both of you. The case is submitted, and the court will be in recess until 1 p.m.